Charles W. Hingle, #1947
Shane P. Coleman, #3417
Jason S. Ritchie, # 7442
Holland & Hart LLP
401 North 31st Street
Suite 1500
P.O. Box 639
Billings, MT  59103-0639
Telephone:  (406) 252-2166
Fax:  (406) 252-1669

ATTORNEYS FOR DEFENDANT
HYUNDAI MOTOR FINANCE COMPANY

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | | |
|---|---|---|
| IN RE: | ) | Case No. 06-60855 |
| | ) | |
| INCREDIBLE AUTO SALES, LLC, | ) | Adversary No. 06-00119 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| AUTO AUCTION ASSOCIATES OF MONTANA, INC., d/b/a AUTO AUCTION OF MONTANA a/k/a AUTO AUCTION OF BILLINGS, | ) ) ) ) | **HMFC'S TRIAL BRIEF** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| INCREDIBLE AUTO SALES, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## INTRODUCTION

The material facts of this adversary case are entirely undisputed, and are reflected in the parties' Pretrial Order. Hyundai Motor Finance Company ("HMFC") is the Debtor's ("Incredible") floor plan lender. HMFC holds a properly perfected security interest in all of Incredible's vehicle inventory. *See* HMFC Ex. 1-5. Shortly before Incredible filed bankruptcy, Auto Auction of Montana ("AAM") sold Incredible certain vehicles, including the "Subject Vehicles" described in the Pretrial Order. Incredible paid for these vehicles with checks. In exchange for the checks, AAM gave Incredible original certificates of title for the vehicles for all but one of the Subject Vehicles. Incredible took physical possession of the vehicles, and offered the vehicles for sale on its lot to retail customers.

Some of the vehicles were sold to retail customers before bankruptcy filing. HMFC does not make any claim to those vehicles, because the retail buyers apparently purchased them for value out of Incredible's inventory in bona fide transactions. Accordingly, HMFC's security interests in those vehicles were extinguished upon sale. AAM has filed an application for an administrative expense for these resold vehicles, and these vehicles are not the subject of this adversary proceeding.

Those vehicles sold by AAM prepetition and remained on Incredible's car lot as of the date of bankruptcy filing are at issue in this case. The seven (7) "Subject Vehicles" are described more fully as follows:

| Year | Make | Model | VIN | Purchased from AAM | Floored by HMFC | Re-Sale Price |
|------|------|-------|-----|--------------------|------------------|----------------|
| 2004 | CHEVY | BLAZER | 1GNDT13X74K 163169 | 10/5/2006 | 10/5/2006 | |
| 2005 | PONTIAC | MONTANA | 1GMDV23E75D 121917 | 10/4/2006 | 10/4/2006 | $9,150 |
| 2004 | FORD | RANGER | 1FTZR44E34P A07225 | 10/3/2006 | 10/3/2006 | $8,050 |
| 2005 | CHEVY | CLASSIC | 1G1ND52F75M 177176 | 10/5/2006 | 10/5/2006 | $6,850 |
| 2003 | CHEVY | MALIBU | 1G1ND52J93M 699843 | 10/5/2006 | 10/5/2006 | $5,350 |
| 2005 | CHRYSLER | SEBRING | 1C3EL46X35N 568587 | 10/5/2006 | 10/5/2006 | $7,900 |
| 2006 | KIA | SORRENTO | KNDJC733565 573207 | | N/A | $13,200 |

Incredible paid for each of the Subject Vehicles with one or more checks, and AAM delivered to Incredible original certificates of title for each of the Subject Vehicles, except for the 2004 Chevy Blazer. Each of the Subject Vehicles was physically delivered to Incredible's retail car lot and offered for sale prepetition, but were not sold. HMFC advanced Incredible new money under the flooring line for the purchase of each of the Subject Vehicles except the 2006 Sorrento, after Incredible took possession of the Subject Vehicles and their certificates of title. Before advancing funds, HMFC received from Incredible copies of signed titles for each of the Subject Vehicles, except the 2006 Kia Sorento. *See* HMFC Ex. 6, 24-29.

After Incredible took possession of the Subject Vehicles and their certificates of title, Incredible became aware that its bank account had insufficient funds to pay the checks tendered to AAM. Incredible informed AAM that the checks would be returned for insufficient funds, and AAM never negotiated the checks. Instead, AAM gave notice of its intent to reclaim the Subject Vehicles under Mont. Code Ann. § 30-2-702 and attempted to repossess the Subject Vehicles. *See* Exhibits to Adversary Complaint. Before AAM could repossess the Subject Vehicles, Incredible filed bankruptcy.

AAM filed this adversary proceeding to reclaim the Subject Vehicles under 11 U.S.C. § 546(c). HMFC intervened because the Subject Vehicles are each subject to HMFC's security interest. Incredible is not interested in this adversary proceeding and default judgment has

3

entered against it.  In December, this Court issued an order directing that the Subject Vehicles be sold and their proceeds be held in trust pending the outcome of this adversary proceeding without prejudice to either party's rights.  The proceeds of the Subject Vehicles were placed in a separate account, except for the proceeds of the 2004 Chevy Blazer, which were mistakenly retained by AAM.  Accordingly, this dispute is over the proceeds from the sale of the Subject Vehicles.  This adversary proceeding is limited to the narrow issue of which competing creditor has a superior interest in the Subject Vehicles – AAM as a reclaiming seller or HMFC as an inventory-secured creditor.  As explained herein, the law is abundantly clear that a seller's reclamation rights are inferior to a secured lender's rights.

## ARGUMENT

**I.   HMFC's Security Interest In The Subject Vehicles Is Superior To AAM's Reclamation Claim.**

Section 546(c) of the Bankruptcy Code is the mechanism by which vendors may exercise their UCC reclamation rights.  Under Mont. Code Ann., § 30-2-702(3), vendors' reclamation rights are subject to the rights of any "buyer in ordinary course or other good faith purchaser," which include secured lenders.  Thus, sellers relying on section 546(c) to reclaim property, must reclaim such personal property subject security interests that attach to the property.

The 2005 amendments to the Bankruptcy Code make this point particularly clear.  Section 546(c) now expressly states that any reclamation rights pursued under section 546(c) are "**subject to the prior rights of a holder of a security interest in such goods or the proceeds thereof**."  11 U.S.C. § 546(c) (emphasis added).  Commentators note that this amendment "confirms the proposition that a security interest in goods subject to reclamation is **prior to** the rights of the reclaiming creditor."  Hon. Wm. Houston Brown and Lawrence R. Ahern III, *2005 Bankruptcy Reform Legislation with Analysis* (2005), p. 104 (emphasis added).  Thus, Section

4

546(c) entitles HMFC to full payment from the Subject Vehicles. The Court's inquiry need go no further.

Even before the 2005 amendment, the overwhelming majority of courts made clear that an inventory lender's security interest in after acquired property is superior to an unpaid cash seller's reclamation right. "Most courts have treated 'a holder of a prior perfected, floating lien on inventory … as a good faith purchaser with rights superior to those of a reclaiming seller.'" *In re Arlco, Inc.*, 239 B.R. 261 (S.D.N.Y. 1999) (collecting cases); *see also In re Victory Markets Inc.,* 212 B.R. 738, 742 (Bankr. N.D.N.Y. 1997) (*citing Stowers v. Mahon (In re Samuels & Co.),* 526 F.2d 1238, 1242-43 (5th Cir.1976)); *In re Child World, Inc.,* 145 B.R. 5, 7 (Bankr. S.D.N.Y. 1992); *Sandoz Pharmaceuticals Corp. v. Blinn Wholesale Drug Co., Inc.* (*In re Blinn Wholesale Drug Co., Inc.*), 164 B.R. 440, 443 (Bankr.E.D.N.Y.1994); *Isaly Klondike Co. v. Sunstate Dairy & Food Products Co. (In re Sunstate Dairy & Food Products Co.),* 145 B.R. 341, 344 (Bankr. M.D. Fla. 1992); *In re Leeds Building Products, Inc.*, 141 B.R. 265, 268 (Bankr. N.D. Ga. 1992); *Leeds,* 141 B.R. at 268; *House of Stainless, Inc. v. Marshall & Ilsley Bank,* 249 N.W.2d 561, 567 (Wis. 1977) (*citing, In re Hayward Woolen Co.,* 3 U.C.C.Rep.Serv. 1107, 1111-12 (Bankr. D. Mass.1967); *First-Citizens Bank & Trust Co. v. Academic Archives,* 179 S.E.2d 850, 853 (N.C. App. 1971); *Guy Martin Buick, Inc. v. Colorado Springs Nat. Bank,* 519 P.2d 354, 358 (Colo. 1974)). These cases noted that a secured lender with a floating lien is treated as a good faith purchaser under the UCC, who takes its security interest free and clear of any reclamation rights.

AAM may argue that HMFC did not act in good faith, as the unsuccessful reclaiming seller in *Arlco* did. Specifically, AAM may suggest that HMFC knew or should have known that Incredible was having financial trouble in the fall of 2006 because HMFC received an

5

anonymous tip of "double flooring" and curtailed Incredible's new vehicle financing.  Even under the old section 546(c), this would be insufficient for AAM to carry its burden.  Under much worse facts, *Arlco* held "the secured creditor with a floating lien remains a good faith purchaser even if it terminates funding with knowledge that sums are owed to third parties, as long as the decision concerning the funding was commercially reasonable." *Arlco*, 239 B.R. at 271.  The *Arlco* court further held, "a decision to stop funding such an enterprise is 'clearly reasonable.'" *Id.*  The Court need not delve into the lengthy analysis of *Arlco*, however, because revised section 546(c) codifies its holding and the holdings of the myriad other reclamation cases that predate the 2005 amendments.

II.     **HMFC's Security Interest Attached To The Subject Vehicles, Because Incredible Obtained "Rights In The Collateral."**

Inspired by the Court's ruling in connection with the motion for relief from stay filed by Steve's Auto Sales (dkt. 181, 182), AAM may argue that HMFC's security interest never attached to the Subject Vehicles.  For a security interest to attach, (1) the lender must give value, (2) the debtor must have rights in the collateral, and (3) the debtor must sign a security agreement describing the collateral.  Mont. Code Ann. § 30-9A-203 (2005).  HMFC clearly gave value (i.e., it advanced funds on Incredible's line of credit), and Incredible signed a security agreement granting HMFC a security interest in its inventory and after-acquired inventory.  *See* HMFC Ex. 1.  The only issue on AAM's possible claim might be whether Incredible "acquired "rights in the collateral."  With respect to Steve's Auto's motion, the Court found that Incredible did not acquire rights in those particular vehicles.  This adversary case presents entirely different facts that compel a different outcome.  Specifically, Incredible received not only physical possession of the Subject Vehicles, but also received original certificates of title from AAM (except for the 2004 Chevy Blazer), unlike the vehicles purchased from Steve's Auto.

As discussed in previous filings, Incredible acquired rights in the Subject Vehicles as soon as legal title passed from AAM to Incredible, at the latest. Physical delivery of the Subject Vehicles determines when title to the vehicles transferred. The legal concept of the passing of "title" under the UCC is completely different from, and independent of, the physical delivery of written "certificates of title" for goods. The UCC applies two different rules to the significance of delivery of certificates of title, depending upon whether the goods are physically delivered to the buyer. *Compare* Mont. Code Ann. § 30-2-401(2) *with* § 30-2-401(3).

Subsection 401(2) makes clear that title to goods passes when the goods are delivered, regardless of reservation of certificates of title:

> (2) Unless otherwise **explicitly** agreed title passes to the buyer at the time and place at which the seller completes performance with reference to the **delivery of the goods**, despite any reservation of a security interest and **even though a document of title is to be delivered at a different time or place**; and in particular and despite any reservation of a security interest by the bill of lading:
>
> (a) if the contract requires or authorizes the seller to send the goods to the buyer but does not require the seller to deliver them at destination, title passes to the buyer at the time and place of shipment; but
>
> (b) if the contract requires delivery at destination, title passes on tender there.

Mont. Code Ann., § 30-2-401(2) (emphasis added). Here, legal title to the Subject Vehicles passed from AAM to Incredible when the Subject Vehicles were physically delivered to Incredible's lot. There is no evidence that AAM and Incredible mutually "explicitly agreed" to a different arrangement for the passing of legal title. The only evidence at trial on this point will come from Incredible's own employees who will testify that they believed that they had legal title to the Subject Vehicles when they

7

acquired possession. They objectively manifested their belief by offering the Subject Vehicles for sale upon receiving them.

Further, original certificates of title were also transferred from AAM to Incredible for all of the Subject Vehicles except for the 2004 Chevy Blazer. Even without physical delivery of the Subject Vehicles from AAM to Incredible's retail lot, Incredible still would have obtained legal title. The delivery of a certificate of title is relevant and determines the passing of title **only** where the goods are not physically delivered to the buyer:

> (3) Unless otherwise explicitly agreed **where delivery is to be made without moving the goods**,
>
> (a) if the seller is to deliver a tangible document of title, title passes **at the time when and the place where the seller delivers such documents** and if the seller is to deliver an electronic document of title, title passes when the seller delivers the document; or
>
> (b) if the goods are at the time of contracting already identified and no documents of title are to be delivered, title passes at the time and place of contracting.

Mont. Code Ann., § 30-2-401(3) (emphasis added). AAM gave Incredible original certificates of title for six of the Subject Vehicles, so title would have passed to Incredible by that act alone. Again, there is no evidence that AAM and Incredible mutually "explicitly agreed" to a different arrangement for the passing of legal title.

AAM cannot prevail in this action because it cannot show that Incredible and AAM had an **explicit agreement** to overcome both default provisions of the UCC. Specifically, AAM must prove that it **explicitly agreed** with Incredible that legal title to the Subject Vehicles would not pass to Incredible, despite physical delivery of both the Subject Vehicles and their original certificates of title. AAM cannot meet its burden of proving such an "explicit agreement."

8

In sharp contrast to the facts surrounding the vehicles sold by Steve's Auto Sales, Incredible **did** receive original certificates of title to all but one of the Subject Vehicles. Likewise, this Court's decision with respect to Steve's Auto Sales relies heavily on the Texas court's ruling in *Arcadia Financial, Ltd. v. Southwest-Tex Leasing Co.*, 78 S.W.3d 619 (Tex. App. 2002). There, as with Steve's Auto, the seller prevailed because the original certificates of title were never delivered to the buyer, according to the parties' practice over two years involving more than 200 vehicles. Under those unique circumstances, the Texas court found that the parties' extended course of dealing altered the default rules of UCC 2-401 and that transfer of legal title occurred simultaneous with transfer of certificates of title, rather than upon change of physical possession of the vehicles. That distinction does not apply here. Unlike those cases, AAM surrendered original certificates of title to Incredible, with one exception. The sale was complete.

Further, AAM itself admits in its pleadings that the vehicles were sold to Incredible. "The vehicles were sold to Incredible on credit …." Complaint, ¶ 10. Acknowledging that the Subject Vehicles were in fact "sold" to Incredible, AAM made its claim as a reclamation claim under Mont. Code Ann. § 30-2-702. By definition, reclamation claims are available only to "sellers" of goods, and are "**subject to the prior rights of a holder of a security interest in such goods**." 11 U.S.C. § 546(c) (2005) (emphasis added). "A judicial admission is an express waiver made in court by a party or its counsel conceding the truth of an alleged fact," and "has the conclusive effect upon the party who makes it, and prevents that party from introducing further evidence to prove, disprove, or contradict the admitted fact." *Bitterroot Int'l Sys. Ltd. v. Western Star Trucks, Inc.*, 2007 MT 48, ¶ 41 (slip. op. Feb. 21, 2007). AAM's judicial

admissions in its Complaint are conclusive as to the fact that the Subject Vehicles "were sold to incredible on credit."

The fact that HMFC financed only 6 of the 7 Subject Vehicles is irrelevant. HMFC's security interest in inventory includes after-acquired inventory. Article 9's requirement that HMFC give value does not require that HMFC advance new money for every single item of collateral. *See* Mont. Code Ann. § 30-9A-204. "Montana recognizes the validity of after-acquired property clauses in security interests." *Daniels-Sheridan F.C.U. v. Bellanger*, 2001 MT 235, ¶ 28, 307 Mont. 22, 36 P.3d 397; *see also Taylor Rental Corp. v. Ted Godwin Leasing, Inc.*, 209 Mont. 124, 134, 681 P.2d 691, 696 (1984) ("Security interests in after-acquired property are legitimate security devices under the UCC.").

## CONCLUSION

For the foregoing reasons, the Court must enter judgment in favor of HMFC in this adversary proceeding and must direct that all of the proceeds from the Subject Vehicles be paid entirely to HMFC. In particular, the proceeds currently held in trust by AAM's counsel should be disbursed to HMFC. The proceeds of the 2004 Chevy Blazer that were mistakenly retained by AAM following its sale should be paid by AAM to HMFC.

DATED this 22nd day of February, 2007.

>　　　/s/ Shane P. Coleman
> Shane P. Coleman
> Holland & Hart LLP
> P. O. Box 639
> Billings, MT  59103-0639
>
> Attorneys for Hyundai Motor Finance Co.

3671726_2.DOC