Bruce F. Fain
Murphy, Kirkpatrick & Fain, P.L.L.P.
208 North Broadway, Suite 208
P.O. Box 429
Billings, MT 59103-0429
Phone: (406) 256-9700
Fax: (406) 256-9755
E-mail: bruce@murphkirk.com
I.D. Number: 3377

Attorneys for Plaintiff
    Auto Auction of Montana

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re:<br><br>INCREDIBLE AUTO SALES, LLC,<br><br>                Debtor.<br>_____<br><br>AUTO AUCTION ASSOCIATES OF MONTANA, INC., D/B/A AUTO AUCTION OF MONTANA A/K/A AUTO AUCTION OF BILLINGS,<br><br>                Plaintiff.<br><br>   v.<br><br>INCREDIBLE AUTO SALES, LLC,<br><br>                Defendant. | CASE NO.  06-60855<br><br>Adversary No.  06-00119<br><br><br><br>**AUTO AUCTION OF MONTANA TRIAL MEMORANDUM** |

- - - - - - - - - - - - - - - - - -

AUTO AUCTION ASSOCIATES OF MONTANA, INC., d/b/a AUTO AUCTION

OF MONTANA a/k/a AUTO AUCTION OF BILLINGS ("Auto Auction"), through its counsel, submits the following trial brief for the February 26, 2007 trial on its reclamation claim.

## I.   Introduction

The facts in this matter are almost entirely undisputed.  It is undisputed that Auto Auction delivered the Subject Vehicles to Incredible Auto Sales, LLC.  It is undisputed that at the time of these deliveries, HMFC had cut-off all new vehicle financing to Incredible Auto Sales, LLC.  It is undisputed that used car financing continued, but only after each set transaction documents were examined by an analyst of HMFC.

It is undisputed that Auto Auction delivered all titles to Incredible Auto Sales, LLC, except for the title to the Chevy Blazer.  It is undisputed that the back of the faxed copy of the Chevy Blazer title was executed by an employee of Incredible Auto Sales, LLC in the capacity of a "buyer" and "seller." [1]  Significantly, it also appears that HMFC must have received an un-executed facsimile copy prior to receiving the copy executed by the Debtor's employee.  *See,* HMFC Exhibit H-24.

It is undisputed that although HMFC did not advance funds for the actual purchase of the Subject Vehicles, it did HMFC advance new money on all of the Subject Vehicles, except for the Sorrento.  It is also undisputed that HMFC did not receive a title, facsimile

---

[1]This is exactly what occurred in the circumstances surrounding the motion to modify by Steve's Auto Sales.

2

copy or otherwise, for the Sorrento.

It is undisputed that Auto Auction filed a timely reclamation claim. The Debtor was defaulted and a judgment entered against it on the Subject Vehicles declaring that it had no interest in either the Subject Vehicles or the proceeds. *See*, Judgment by Default Against Incredible Auto Sales, LLC, Docket Number 20.

While some testimony and documentary evidence will be introduced at trial, it is clear that most of the facts are undisputed. The only real issue confronting the Court in this matter is who is entitled to the proceeds held in escrow.

## II. ARGUMENT

### A. AUTO AUCTION IS ENTITLED TO ALL PROCEEDS AS THE SALES WERE NOT COMPLETED

This Court has fully addressed the situation where the title has not been surrendered or delivered. *See*, Memorandum of Decision RE: Motion to Modify by Steve's Auto, Docket Number 181. As noted by this Court, "[t]he Auto Auction has established procedures for the handling of the purchase price and receipt and clearing of certificate of titles." *Id.* at p. 9. The failure to follow those procedures, "simply put [means] the sale and purchase was not completed because Debtor failed to pay for the vehicles. . . ." *Id.* at page 10. Auto Auction is clearly entitled to the proceeds of the Blazer, because the title was never delivered.

HMFC has no claim to the Sorrento proceeds because it did not advance funds for the Sorrento. While value may generally include antecedent debt, in this case HMFC's course of performance makes it

3

clear that money was not advanced for the purchase of any of the Subject Vehicles, especially the Sorrento.

The Court's analysis also correctly acknowledged that the parties' course of performance in these sales required full payment prior to a sale being effective. In relation to the Subject Vehicles it is undisputed that while checks were tendered, many of the checks were returned for insufficient funds. The checks which were not deposited were not deposited because the Debtor admitted that the checks would be returned for insufficient funds. These facts make it evident that the Auto Auction was never paid for the Subject Vehicles. In the words of this Court, the sales were "simply put," never completed.

The course of dealings, and the circumstances of this case, also distinguish the current matter from that in *Dinkel Enterprises d/b/a Billings Auto Auction v. Colvern (In re Bailey Pontiac, Inc.),* 139 B.R. 629 (D.C. ND Tex. 1992) where dishonored drafts were involved because unlike *Dinkle,* it is clear from the parties course of dealings that full payment was required.

Perhaps more importantly, in *Dinkel*, there was no evidence of misconduct by the buyer. In this case, there clearly is evidence of misconduct. The misconduct was such that HMFC had previously cut-off all new inventory financing of the Debtor and was only providing used car financing after each and every transaction was scrutinized by an analyst. In addition, unlike in *Dinkel*, the evidence suggests that at the time of tendering the checks the

4

Debtor in fact knew the checks were worthless. *See,* Auto Auction Exhibit 9 and Auto Auction Exhibit 10. This misconduct makes it clear that the Auto Auction is entitled to the proceeds.

**B. MISCONDUCT OF THE DEBTOR MAKES IT CLEAR THAT THERE WAS NO SALE**

The Court in *Dinkle* suggested that misconduct by the Debtor would be sufficient to raise issues as to whether or not the Debtor obtained rights in vehicles.[2] *See, Dinkle,* 139 B.R. at 636. This is not a situation where a party reasonably believed the checks were good when tendered, and the Debtor's own bank statements make it clear that the Debtor knew the checks were bad. As such, the Debtor gained no rights in the Subject Vehicles and neither did HMFC.

**C. HMFC WAS NOT ACTING IN GOOD FAITH SUFFICIENT TO DEFEAT AUTO AUCTION'S CLAIM**

Courts have acknowledged that a "reordering" of priorities may be appropriate if a secured creditor fails to act consistent with the subjective honesty standards of the Uniform Commercial Code. *Mitsubishi Consumer Electronics America, Inc. V. Steinberg's, Inc. (In re Steinberg's, Inc.*) 226 B.R. 8 (Bkrtcy.S.D. Ohio 1998). In *Mitsubishi,* the Court acknowledged the need for subjective good faith, but failed to find a breach of that good faith, and in fact noted that the seller didn't even have any evidence of any lack of good faith. *Id.* at 12.

---

[2]This is important because before HMFC's security interest attaches the Debtor must has rights in the Subject Vehicles or t]he power to transfer rights to a secured creditor. Mont. Code Ann. § 30-9A-203(2)(b).

The *Mitsubishi* Court noted that a secured creditor enforcing its rights consistent with the clear terms and the expectations of the parties may be acting in good faith and that the creditor is not required to continue funding "doomed business." This Court is not dealing with a situation where HMFC was simply enforcing its rights, or dealing with a "doomed business," but instead HMFC completely restructured how it dealt with the Debtor in September of 2006 due to misconduct by the Debtor. HMFC cut off financing of new vehicles. HMFC subjected each and every used car transaction to decisions of an analyst before agreeing to advance funds for vehicles which the Debtor was to use its own funds to purchase. There is nothing in the security agreement of HMFC which suggests that it had the right to act this way.

Under Montana law, a party only acts in "good faith" if they act with "honesty in fact and the observance of reasonable commercial standards of fair dealing." Mont. Code Ann. § 30-1-201(2)(u) (2005). In this case, the actions of HMFC fail to meet this standard.

### III. CONCLUSION

Auto Auction is clearly entitled to the proceeds of the Blazer pursuant to this Court's earlier ruling on Steve's Motion to Modify. In addition, the Court also noted that sales were not completed until the full purchase price was paid, and this was not done with regards to the Subject Vehicles.

More importantly, the circumstances of this case make it clear

6

that the Debtor had no intention of actually paying for the Subject Vehicles. Checks were tendered at a time when the Debtor had a negative balance in its bank account, and the Debtor clearly must have known this fact. By its actions the Debtor did not obtain any rights in the Subject Vehicles.

Finally, HMFC did not act in good faith in its dealings concerning the Subject Vehicles. HMFC was well aware of the misdeeds of the Debtor and it took extraordinary steps in its relationship with the Debtor, steps far beyond that contemplated in its Security Agreement. HMFC may have been protecting its interest, but it certainly was not acting in good faith.

DATED this 22nd day of February, 2007.

>Murphy, Kirkpatrick & Fain, P.L.L.P.
>208 North Broadway, Suite 208
>P.O. Box 429
>Billings, MT 59103-0429
>
>By: /S/ Bruce F. Fain
>    Bruce F. Fain
>    Attorneys for Plaintiff Auto
>    Auction of Montana

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify under penalty of perjury that on this 21st day of February, 2007, a copy of the **AUTO AUCTION OF MONTANA TRIAL MEMORANDUM** was served upon counsel of record by the following method:

  1-4          CM/ECF

1. William L. Needler
   William L. Needler and Associates
   555 Skokie Blvd. Ste. 500
   Northbrook, IL 60062
   williamlneedler@aol.com

2. Charles W. Hingle
   Shane P. Coleman
   P.O. Box 639
   Billings, MT 59103-0639
   chingle@hollandhart.com

3. Neal G. Jensen
   U.S. Trustee
   Liberty Center, Ste. 204
   301 Central Ave.
   P.O. Box 3509
   Great Falls, MT 59401
   Neal.G.Jensen@usdoj.gov

4. Daniel P. McKay
   Office of the U.S. Trustee
   Liberty Center Suite 204
   301 Central Ave.
   Great Falls, MT 59401
   Dan.P.McKay@usdoj.gov

                                          /S/    Bruce F. Fain